**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 14-cv-2294-WJM-KLM

FERNANDO LEONARD, and
MOANA LEONARD f/k/a MOANA SYLVESTER,

    Plaintiffs,

v.

EDWARD D. FITZHUGH,

    Defendants.

---

**ORDER GRANTING IN PART AND DENYING IN PART
PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT**

---

Plaintiffs Fernando and Moana Leonard filed this action on August 20, 2014 against Defendants William Babich and Edward Fitzhugh, alleging negligence and unfair and deceptive business practices in connection with Defendants' alleged legal malpractice.  (ECF No. 2.)  On November 3, 2014, Plaintiffs filed a stipulated Motion to Dismiss Defendant Babich from this suit, which the Court granted.  (ECF Nos. 19 & 20.)  On November 5, 2014, the Clerk of the Court entered default against Defendant Fitzhugh based on his failure to file an answer or otherwise defend this matter.  (ECF No. 23.)  Plaintiffs filed a Motion for Default Judgment against Fitzhugh on November 21, 2014, and a Motion for Hearing on May 6, 2015.  (ECF Nos. 24 & 27.)

The Court held an evidentiary hearing on the Motion for Default Judgment on May 15, 2015, after which the Court ordered Plaintiffs to submit proposed findings of fact and conclusions of law and supplemental briefing on or before June 15, 2015.

(ECF Nos. 28, 29, & 30.)  Plaintiffs submitted the requested documents on May 27, 2015.  (ECF Nos. 31 & 32.)  The Court further ordered Plaintiffs to provide supplemental briefing on Defendant Fitzhugh's bankruptcy petition, which was filed on June 15, 2015.  (ECF Nos. 33 & 34.)  The following are the Court's final findings of fact and conclusions of law with respect to Plaintiffs' award of damages against Defendant Fitzhugh.

## I.  LEGAL STANDARD

Before granting a motion for default judgment, the Court must take several steps.  First, the Court must ensure that it has personal jurisdiction over the defaulting defendants and subject matter jurisdiction over the action.  *See Williams v. Life Sav. & Loan*, 802 F. 2d 1200, 1202-03 (10th Cir. 1986).  Next, the Court should consider whether the well-pleaded allegations of fact, which are deemed admitted by a defendant in default, support a judgment on the claims against the defaulting defendants.  *See Fed. Fruit & Produce Co. v. Red Tomato, Inc.*, 2009 WL 765872, at *3 (D. Colo. March 20, 2009) ("Even after entry of default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate basis for the entry of a judgment.") (citations omitted).  "In determining whether a claim for relief has been established, the well-pleaded facts of the complaint are deemed true."  *Id.* (citing *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983)).  Once the Court is satisfied that a default judgment should be entered, the moving party must supply proof as to the amount of damages.  *See Klapprott v. United States*, 335 U.S. 601, 611-12 (1949).

## II.  FINDINGS OF FACT

**A.     The Events Giving Rise to Plaintiffs' Lawsuit**

1. Plaintiffs, a married couple, were tenants of a rental property located at 6837 Highway 140, Hesperus, Colorado in 2011.  (Compl. (ECF No. 2) at 1.)

2. In the early morning hours of July 9, 2011, a propane gas explosion occurred, causing the upstairs kitchen to fall to the room below where Plaintiffs were sleeping.  (*Id*. at 2.)

3. The gas explosion also caused a fire.  (*Id*. at 2-3.)

4. As a result of the gas explosion, Plaintiffs suffered injuries, including but not limited to burns.  (*Id.*)  Ms. Leonard testified that she suffered from a burn on her heel and other "minor burns."  (Test. of Moana Leonard.)  Plaintiffs' Complaint states that Mr. Leonard received severe burns over 25% of his body.  (Compl. at 2.)  Mr. Leonard testified that the burns on his legs and other areas of his body required extensive medical treatment, including skin grafts.  (Test. of Fernando Leonard.)  According to Mr. Leonard, those portions of his body that received skin grafts cause him intense pain when exposed to sunlight.  (*Id*.)  Mr. Leonard further testified that he continues to experience muscle spasms and other lasting damage due to his injuries.  (*Id*.)

5. Plaintiffs retained the services of Defendant Edward Fitzhugh, an Arizona attorney, by written fee agreement, to represent them in a Colorado state district court action against Amerigas and Plaintiffs' landlord to seek compensation for their injuries.  (Compl. at 3; Test. of Moana Leonard.)

6. Fitzhugh subsequently affiliated with Colorado attorney William Babich as local counsel for the Colorado state court action. (*Id.*)

7. Babich agreed to act as local counsel pursuant to a co-counsel fee agreement. (Compl. at 4.)

8. Babich's involvement in the case was contingent upon Fitzhugh seeking admission *pro hac vice*, handling all discovery, attending depositions, and advancing costs. (*Id.*)

9. During the course of the state court litigation, Fitzhugh failed to enter his appearance *pro hac vice*, failed to participate in the litigation, and failed to front costs as agreed. (*Id.*)

10. After attempts by Babich to persuade Fitzhugh to enter his appearance *pro hac vice*, and to enlist Fitzhugh's help in preparing for trial of the state court action, Babich withdrew from representation of the Plaintiffs in November 2013. (*Id.* at 3-4.)

11. Plaintiffs' state court action proceeded to the pretrial conference where Plaintiffs, acting under the assumption that Fitzhugh had done everything necessary to pursue their case, went unrepresented. (*Id.* at 4; Test. of Moana Leonard.)

12. Fitzhugh was provided a copy of the motion to withdraw, but continued to take no action on behalf of Plaintiffs, other than to maintain that he continued to represent them. (Compl. at 4.)

13. Based on the disclosure and other procedural violations, the state district judge held at the pretrial conference that no further continuances of the April 2014 trial

would be granted, and all witnesses and exhibits not disclosed within one week would be excluded at trial.  (*Id*.)

14. More than a week passed without such disclosures, precluding Plaintiffs from introducing any exhibits or witnesses at trial.  (*Id*.)

15. On March 20, 2014, the state court defendants took Plaintiffs' depositions, at which point it became clear that Plaintiffs could not establish liability against the defendants.  (*Id*. at 4-5.)  The claims against both defendants were therefore dismissed in exchange for payment by Amerigas of $5,000.00, and an agreement by Plaintiffs' landlord not to seek attorney's fees and costs.  (*Id*.)

16. Up to and including the date of depositions, one month before the scheduled trial date, Fitzhugh was in telephonic contact with Plaintiffs, maintaining that he continued to represent them.  (*Id*.; Test. of Moana Leonard.)

17. Fitzhugh appears to have largely ignored expert reports asserting zero liability in the two state court defendants.  (Compl. at 5.)

18. During the time of Fitzhugh's purported representation of Plaintiffs, Fitzhugh was suspended from the practice of law in Arizona—his only state of admission—from March 29, 2013 through December 16, 2013; this information was provided to Plaintiffs in correspondence from Fitzhugh, which Plaintiffs relayed to Babich who had been unaware of Fitzhugh's suspension.  (Test. of Fernando Leonard; Ex. 3.)[1]

---

[1] Plaintiffs' exhibits were admitted into evidence in hard-copy form during the evidentiary hearing on May 15, 2015, but were not uploaded to the CM/ECF case management system, and therefore have no corresponding docket number.

5

19. Plaintiffs subsequently filed the instant litigation against Babich and Fitzhugh. (*See generally* Compl.)

20. Babich filed a Motion to Dismiss Pursuant to F.R.C.P. 12(b)(6), and Plaintiffs stipulated to Babich's dismissal. (ECF No. 17.)

21. Following Fitzhugh's failure to answer Plaintiffs' complaint or otherwise appear in this litigation, the Clerk of Court entered default against Fitzhugh on November 5, 2014. (ECF No. 23.) Plaintiffs subsequently moved for default judgment (ECF No. 24), and a damages hearing was held on May 15, 2015, during which Plaintiffs submitted testimony and evidence of the damages outlined herein. (ECF No. 30.)

**B.    Plaintiffs' Damages**

    1.    Past Medical Expenses

22. Plaintiff Moana Leonard suffered relatively minor burns, requiring brief hospitalization and treatment. (Test. of Moana Leonard; Ex. 2.)

23. Ms. Leonard's medical expenses total $3,432.52, including $1,432.52 for ambulance transportation by Durango Fire & Rescue following the explosion, and approximately $2,000.00 in medical bills from Southwest ER Physicians/Mercy Medical Center. (Ex. 2; Test. of Moana Leonard.)

24. The difference between the original total of Ms. Leonard's Southwest ER Physicians bill ($349.00), and the amended total of $2,000.00, is based on Ms. Leonard's testimony that she received a recent bill with the updated $2,000.00 total based on the length of time the original amount went unpaid and charges associated therewith. (Ex. 2; Test. of Moana Leonard.)

25. Plaintiff Fernando Leonard was burned much more severely over twenty-five percent of his body. (Compl. at 2.) (Fernando L. Test.; Exs. 1, 2.)

26. Mr. Leonard's medical bills, as documented in Exhibit 2, total $130,115.79, and include:

    a. San Juan Regional Medical Center ER, $10,656.16;
    b. Air Care1 to San Juan Regional Medical Center, $11,606.16;
    c. Air Care2 to University of New Mexico Medical Center, $17,046.00;
    d. Ambulance service, $299.00;
    e. San Juan regional Medical Center ER Physicians, $677.00;
    f. Four Corners Radiology, $29.11;
    g. University of New Mexico Health Sciences Center, $72,590.36;
    h. Albuquerque Ambulance, $569.00; and
    i. UNM Medical Group, $16,643.00.

(Exs. 1 & 2.)

### 2. Future Medical Expenses

27. Plaintiffs' future medical costs are unknown to any degree of legal certainty, as Plaintiffs presented no testimony or documentation on precisely what their future medical expenses might be. The Court therefore has no evidence on which to base a finding of Plaintiffs' entitlement to future medical expenses.

### 3. Costs

28. Plaintiffs have expended costs of $533.70, including filing fees of $403.70 and service of process fees of $130.00. (Aff. of Christian Hatfield; Test. of Moana Leonard.) Additional costs for Plaintiffs' counsel's appearance at the May 15, 2015 damages hearing totaled $3,113.00, resulting in total costs of $3,646.70. (Aff. of Christian Hatfield.)

### 4. Lost Wages

29. Mr. Leonard testified that he missed approximately 280 hours of work due to his

7

injuries. (Test. of Fernando Leonard.) Although Mr. Leonard did not testify as to his hourly wage, Plaintiffs' counsel stated in his Proposed Findings of Fact that Mr. Leonard earned $26.00 per hour. (ECF No. 31 at 6.) Although this information should have been provided in an affidavit from Mr. Leonard, or elicited through his testimony, the Court will accept this figure as accurate because Plaintiffs' counsel is an officer of this Court. The Court therefore finds that Mr. Leonard sustained lost wages in the amount of $7,280.00.

     5.     Personalty

30. Plaintiffs lost all of their belongings in the fire, which included clothing, furniture, and turquoise jewelry acquired by Ms. Leonard over the course of years, which she testified was worth $3,000.00. (Test. of Moana Leonard.)

     6.     Pain and Suffering Damages

31. Mr. and Ms. Leonard testified that on the night of the explosion, Mr. Leonard woke up screaming and realized that the kitchen above had collapsed on his and Ms. Leonard's bedroom. (Test. of Fernando Leonard and Moana Leonard.) Surrounded by flames, Mr. Leonard quickly escorted Ms. Leonard from the home, and collapsed. (*Id.*) A neighbor carried Mr. Leonard from the scene and placed him in a chair. (*Id.*) Mr. Leonard testified that he was still conscious at this point, saw his burned skin fall down around his ankles as he waited for medical help, and that his injuries were extremely painful. (Test. of Fernando Leonard.) Plaintiffs' Complaint states that Mr. Leonard received severe burns over 25% of his body. (Compl. at 2.)

32. Ms. Leonard witnessed her husband's injuries, traveled repeatedly to be with him

during his hospitalization and recovery, and was also injured, albeit less severely. (Test. of Moana Leonard.)

33. Mr. Leonard further testified that, before the explosion, he slept well throughout the night. (Test. of Fernando Leonard.) However, he now regularly awakes in the middle of the night and cannot fall back asleep for hours at a time. (*Id.*) Mr. Leonard testified that this occurs every other night, and that he frequently goes to work feeling tired. (*Id.*)

34. Plaintiffs' Exhibit One contains several pictures of the devastation caused by the explosion, including Plaintiffs' destroyed home, and Plaintiffs' injuries. The Court finds these photos, the accompanying medical records, and Plaintiffs' testimony to be compelling evidence of Plaintiffs' pain and suffering. (Exs. 1 & 2; Test. of Moana and Fernando Leonard.)

### 7. Deceptive Trade Practices Damages

35. Plaintiffs submitted a post-hearing brief regarding the award of damages for Defendant's deceptive trade practices. Based on the evidence presented at the hearing and Plaintiffs' briefing on Colorado's Consumer Protection Act, Plaintiffs have not demonstrated the existence of a harm to the public as opposed to a merely private wrong. *See Crowe v. Tull*, 126 P.3d 196, 204, 208 (Colo. 2006) (holding that the Colorado Consumer Protection Act "cannot be used to remedy a purely private wrong."). The Court accordingly finds that Plaintiffs are not entitled to damages on their claim for deceptive trade practices under the Colorado Consumer Protection Act. The Court also declines to award Plaintiffs attorneys' fees, as Plaintiffs have not submitted any authority other than the

Consumer Protection Act that suggests their entitlement to such fees.

### 8. Physical Impairment and Disfigurement Damages

36.   Plaintiffs further seek damages for physical impairment or disfigurement. The Court finds, based on the facts recited above, that Mr. Leonard is entitled to such damages. Because Ms. Leonard testified she suffered only minor burns, the Court declines to award her damages for physical impairment and disfigurement. (Test. of Moana Leonard.) The Court will determine the proper amount of Mr. Leonard's physical impairment and disfigurement damages below.

## III. CONCLUSIONS OF LAW

**A.   Defendant's Pending Bankruptcy Case**

The Court must first determine whether Defendant's ongoing bankruptcy case affects the Court's ability to enter a default judgment in this matter. On May 30, 2013, Defendant filed a voluntary Chapter 7 bankruptcy petition in the U.S. Bankruptcy Court for the District of Arizona. *In re Fitzhugh*, 2:13-bk-09235 (Bankr. D. Ariz. 2013); (ECF No. 34 at 1.)

A Chapter 7 petition "discharges the debtor from all debts that arose before the date of the order for relief." 11 U.S.C. § 727. When a debtor files a bankruptcy petition, all actions against his estate are automatically stayed pursuant to 11 U.S.C. § 362. However, the Bankruptcy Code does not stay judicial proceedings that could not have been commenced prior to the bankruptcy petition, or proceedings to recover a claim against the debtor that did not arise before the commencement of the bankruptcy case. 11 U.S.C. § 362(a)(1); *see also Matter of Growth Dev. Corp.*, 168 B.R. 1009, 1014

(Bankr. N.D. Ga. 1994) ("Proceedings and claims that arise postpetition are not subject to the automatic stay. Rather, it is the *enforcement* of these claims that may be prohibited by the automatic stay.") (emphasis in original); *In re Reynard*, 250 B.R. 241, 244 (Bankr. E.D. Va. 2000) (automatic stay does "not prevent the commencement of a lawsuit to collect a post-petition debt . . . [and a] "post-petition creditor . . . has the right to initiate a suit against a debtor and obtain a judgment for a post-petition debt without violating the automatic stay").

This action and the Court's issuance of a default judgment against Defendant do not violate the automatic stay. Plaintiffs' claims could not have arisen until after Defendant's bankruptcy filing. In Colorado, "[t]he statute of limitations for a legal malpractice action commences running at the time the client discovers, or through use of reasonable diligence should have discovered, the negligent act of the attorney." *Broker House Int'l, Ltd. v. Bendelow*, 952 P.2d 860, 863 (Colo. App. 1998). The Court finds that, at the earliest, Plaintiffs discovered, or should have discovered, Defendant's malpractice in November 2013 when Mr. Babich withdrew from representation due to Defendant's failure to comply with the terms of the co-counsel agreement with Plaintiffs. (ECF No. 2 at 3.) Therefore, because Defendant's bankruptcy petition was filed on May 30, 2013, this action could not have been commenced prior to, and Plaintiffs' claims against Defendant did not arise before, the commencement of the bankruptcy case. 11 U.S.C. § 362(a)(1). The Court accordingly proceeds with its analysis below.

**B.   The Court's Jurisdiction**

The Court finds that it has proper subject matter jurisdiction pursuant to 28

U.S.C. § 1332 because Plaintiffs and Defendant are diverse and the amount in controversy exceeds $75,000.00. (ECF No. 2.) The Court also finds that it has personal jurisdiction over Defendant because Defendant negotiated and entered into a written fee agreement with Colorado residents, and Defendant's breach of that agreement caused foreseeable harm to Plaintiffs in Colorado. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479 (1985). Therefore, the Court has jurisdiction over all claims and parties in this action.

**C.     Plaintiffs' Negligence Claim**

Plaintiffs' Complaint asserts that Defendant acted negligently during his representation of Plaintiffs in the underlying state court action, which caused them to sustain the losses described above. (ECF No. 2.) To succeed on a legal malpractice claim founded in negligence, "a plaintiff must establish that (1) the attorney owed a duty of care to the plaintiff; (2) the attorney breached that duty; and (3) the attorney proximately caused damage to the plaintiff." *Luttgen v. Fischer*, 107 P.3d 1152, 1154 (Colo. App. 2005). "Establishing causation in a legal malpractice action requires the . . . plaintiff [to] demonstrate that the claim underlying the malpractice action would have been successful if the attorney had acted in accordance with his or her duties." *Id*. Except in "clear and palpable cases," expert testimony is necessary to establish the standards of professional conduct in legal malpractice actions. *McCafferty v. Musat*, 817 P.2d 1039, 1044 (Colo. App. 1990).

The Court finds that Defendant was negligent in his representation of Plaintiffs, and that Plaintiffs would not have incurred the damages they now seek but for

Defendant's conduct. Defendant represented to Plaintiffs, and Mr. Babich as local counsel, that he would appear on Plaintiffs' behalf *pro hac vice* in the state court action. (ECF No. 2 at 3.) Defendant failed to do so, and Plaintiffs were consequently prohibited from introducing any exhibits or witnesses at trial. (*Id*. at 4.) While Amerigas and Plaintiffs' landlord were dismissed from the suit, the reports of experts retained by Plaintiffs that could have established liability in Amerigas and the landlord were excluded from trial due to Defendant's failure to timely disclose them. (*Id*. at 5.) Moreover, Defendant largely ignored expert reports assessing zero liability in Amerigas and Plaintiffs' landlord. (*Id*.) Expert testimony is not necessary for the Court to determine that Defendant's conduct was negligent and constituted a "clear and palpable" deviation from the acceptable standards of professional conduct. *McCafferty*, 817 P.2d at 1044. The Court accordingly finds that Defendant's negligence prevented Plaintiffs from asserting their claims against two parties potentially responsible for their injuries, and that the state court action would have succeeded, whether against the named defendants or others, in the hands of competent counsel. Therefore, the Court will award Plaintiffs damages on the negligence count of their Complaint.

Here, the available categories of damages include: (1) economic damages, including lost wages, the value of destroyed personal property, and medical expenses that are reasonable in amount and medically necessary, *see Kendall v. Hargrave*, 349 P.2d 993, 994 (Colo. 1960); (2) non-economic damages, including pain and suffering, *see Van Schaack & Co. v. Perkins*, 272 P.2d 269, 272 (1954); *see also* Colo. Rev. Stat. §§ 13-21-102.5(3); (3) physical impairment or disfigurement damages, *see Cooley v.*

*Paraho Dev. Corp.*, 851 P.2d 207, 210 (Colo. Ct. App. 1992); *see also* Colo. Rev. Stat. § 13-21-102.5(5) (cap on non-economic damages not to be construed to limit separate damages for physical impairment or disfigurement). The Court discusses each category of damages below.

    1.    <u>Economic Damages</u>

Ms. Leonard testified that her medical expenses totaled $3,432.52, and submitted medical records and bills in support thereof. (Test. of Moana Leonard; Exs. 1 & 2.) Mr. Leonard submitted medical records and bills documenting medical expenses of $130,115.79. (Exs. 1 & 2.) The Court has reviewed Plaintiffs' exhibits and finds that these medical expenses were reasonable and medically necessary as a result of the explosion. The Court accordingly awards Ms. Leonard $3,432.52 and Mr. Leonard $130,115.79 as compensation for their medical expenses incurred as a direct result of the explosion and Defendant's negligence.

Mr. Leonard testified that he missed 280 hours of work due to his hospitalization and subsequent recovery. (Test. of Fernando Leonard.) The Court also accepts that Mr. Leonard earned $26.00 per hour. The Court therefore awards Mr. Leonard $7,280.00 in damages for lost wages.

Ms. Leonard testified that she and Mr. Leonard lost approximately $3,000.00 in jewelry and other personal property due to the explosion. (Test. of Moana Leonard.) The Court found Ms. Leonard's testimony to be credible on this issue, and therefore awards Plaintiffs $3,000.00 in damages for their personal property that was destroyed.

Plaintiffs' counsel submitted an affidavit that documented $3,646.70 in costs expended in this matter to date. (ECF No. 31-1.) Plaintiffs are therefore awarded

$3,646.70 in costs pursuant to Federal Rule of Civil Procedure 54(d), which provides that costs, other than attorneys' fees, should be awarded to a prevailing party.

    2.    <u>Non-economic Damages and Physical Impairment and Disfigurement</u>

Mr. Leonard requests pain and suffering damages in the amount of $500,000.00. (ECF No. 31 at 9.) Colorado law imposes a limitation on damages for non-economic injury of $250,000.00 per claimant, or $500,000.00 per claimant if the Court finds "justification by clear and convincing evidence therefor." Colo. Rev. Stat. § 13-21-102.5(3)(a). However, these figures are adjusted for inflation, allowing the Court to award $468,010.00 for a successful claim under § 13-21-102.5(3)(a), which may be increased upon clear and convincing evidence to a maximum of $936,030.00. Colo. Rev. Stat. § 13-21-102.5(3)(c)(III). These limitations do not apply to awards for physical impairment or disfigurement. Colo. Rev. Stat. § 13-21-102.5(5).

The evidence shows that the explosion harmed Plaintiffs physically and mentally, resulting in substantial pain and suffering. Some of this harm, particularly Mr. Leonard's burns and skin grafts, will cause Plaintiffs pain and suffering for the remainder of their lives. Moreover, Mr. Leonard's burns have resulted in serious physical impairment and disfigurement. The Court therefore awards Ms. Leonard $12,865.04 in pain and suffering damages, as requested. (ECF No. 31 at 9.) The Court declines to award Ms. Leonard any damages for her physical impairment or disfigurement based on her testimony that she suffered only minor burns. (Test. of Moana Leonard.) The Court further declines to award Mr. Leonard his requested sum of $500,000.00 for pain and suffering as he has not presented clear and convincing evidence suggesting his entitlement to such an award. The Court instead awards Mr.

Leonard $250,000.00 for his pain and suffering, and an additional $100,000.00 for his physical impairment and disfigurement.

3.     Total Damages

In sum, the Court finds that Ms. Leonard sustained $6,432.52 in economic damages, and $12,865.04 in non-economic damages. The Court further finds that Mr. Leonard sustained $137,395.79 in economic damages, and $350,000 in non-economic damages. Plaintiffs are further awarded $3,646.70 in costs. The Complaint lastly requests pre-judgment interest on the foregoing amounts. (ECF No. 2.) In accordance with Colorado Revised Statute § 13-21-101, Plaintiffs are entitled to interest on their damages from the date this action accrued[2], or July 9, 2011, when the explosion occurred, at a rate of 9% compounding annually.[3] Ms. Leonard is accordingly awarded

---

[2] Plaintiffs did not address the date on which their claims accrued. *Schuessler v. Wolter*, 310 P.3d 151, 168 (Colo. App. 2012) ("Pursuant to section 13-21-101, a party must request interest from either the date suit is filed or the date an action accrues."). Nonetheless, the Court awards prejudgment interest from the date of the explosion, July 9, 2011, and finds that this is the date on which Plaintiffs' claims accrued. *See McCafferty*, 817 P.2d at 1046 ("Moreover, because [the defendant's] legal malpractice was an injury personal to [the plaintiff], . . . the trial court erred in denying [the plaintiff] prejudgment [interest] as of the date of the accident, as of which date he would have been entitled to prejudgment interest in the underlying case absent [the defendant's] malpractice.").

[3] Plaintiffs are entitled to interest under Colorado Revised Statute § 13-21-101 even though this is a malpractice action. *McCafferty*, 817 P.2d at 1046 ("We hold that if the case underlying a malpractice action involves actual physical or mental pain and suffering, as here, the injuries suffered by virtue of the malpractice are *per se* to be considered personal injuries" for purposes of § 13-21-101). Plaintiffs are also entitled to interest on both their economic and non-economic damages. *David v. Sirius Computer Solutions, Inc.*, 779 F.3d 1209, 1210-11 (10th Cir. 2015) (holding that § 13-21-101 "does not limit prejudgment interest to cases involving physical injuries, bodily injuries, or noneconomic damages. Instead, it permits interest in any action brought seeking compensation for a personal injury without any apparent consideration to the nature of the compensatory damages the jury happens to award"). However, Plaintiffs are not entitled to interest on any losses attributable to the destruction of their personal property, costs, or lost wages. *Herod v. Colo. Farm Bureau Mut. Ins. Co.*, 928 P.2d 834, 838 (Colo. App. 1996) ("§ 13-21-101(1) . . . provides for prejudgment interest on damages for personal injuries. An injury is personal when it impairs the well-being or the

16

$5,790.77 in interest, and Mr. Leonard is awarded $170,592.37 in interest.

## IV.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Plaintiffs' Motion for Default Judgment (ECF No. 24) is GRANTED IN PART AND DENIED IN PART as detailed herein, and default judgment shall enter against Defendant Edward D. Fitzhugh;

2. Plaintiff Moana Leonard is awarded $19,297.56 in damages against Defendant Edward D. Fitzhugh, and prejudgment interest pursuant to Colorado Revised Statute § 13-21-101 in the amount of $5,790.77;

3. Plaintiff Fernando Leonard is awarded $487,395.79 in damages against Defendant Edward D. Fitzhugh, and prejudgment interest pursuant to Colorado Revised Statute § 13-21-101 in the amount of $170,592.37;

4. Plaintiffs are awarded $3,646.70 in costs;

5. Plaintiffs shall have post-judgment interest as permitted by law; and

6. The Clerk shall enter final judgment in accordance with this Order and shall TERMINATE this case.

---

mental or physical health of the victim.  In contrast, an injury is not personal when inflicted on property.").

Dated this 19th day of June, 2015.

BY THE COURT:

William J. Martínez
United States District Judge